# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PETRICE M. MARINI, et al., <br><br> Defendants. | CASE NO. 1:16-cv-477-AWI-JLT <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> **ORDER DENYING DEFENDANTS' MOTION TO STRIKE** |

## I. Introduction

On April 6, 2016, Plaintiff J&J Sports Productions, Inc. ("Plaintiff"), brought suit against Petrice Marini and Vincent Marini, individually and doing business as Vinny's Bar ("Defendants"), alleging that Defendants unlawfully intercepted (or received) and broadcast *"The Fight of the Century" Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program* (the "Program"), over which Plaintiff was granted exclusive rights for nationwide commercial distribution. *See* Doc. 1; Affidavit of Joseph M. Gagliardi, Doc. 31-3 ("Gagliardi Aff.") at ¶ 3. Plaintiff moves for summary judgment because Defendants have acknowledged having displayed the Program. Defendants oppose the motion on the ground that the Program was displayed on a channel authorized for their use. Plaintiff made valid objections to the Court's consideration of much of the evidence submitted by Defendants. The Court afforded

1

Defendants an opportunity to resubmit the evidence in a form that the Court could consider and gave instructions on how to do so. Defendants failed to resubmit the evidence as permitted.

For the following reasons, Plaintiff's motion for partial summary judgment will be granted.

## II. Background

Undisputed Facts Supported by Evidence:

Plaintiff is a television production company that obtained "the exclusive nationwide commercial distribution (closed-circuit) rights to" the Program. Gagliardi Aff. at ¶ 3. Plaintiff granted limited sublicenses to various commercial entities in California, specifically permitting public exhibition of the Program in the commercial establishments that those entities operated. *Id*. Defendants did not obtain any license to receive or display the Program to the public at Vinny's Bar. *Id.* Defendants did receive and display at least some portion of the Program to patrons at Vinny's Bar on Saturday, May 2, 2015. Doc 1 at ¶ 21. Specifically, Defendant's investigator "observed one television located inside [Vinny's Bar] playing the [Program]. The TV was a 32" flat screen, located on the left hand side of the bar." Affidavit of Brandi Sutton, Doc.31-4 ("Sutton Aff.") at 2-3.

Defendants Vincent and Petrice Marini are co-owners of Vinny's Bar in Bakersfield, California. *See* Declaration of Vincent and Petrice Marini, Doc. 35 ("Marini Decl.") at ¶ 1. Defendants admit having displayed the main event of the Program to the Patrons of Vinny's Bar on Saturday, May 2, 2015. Doc. 18 at ¶ 12; *see* Marini Decl. at ¶¶ 8, 12.

Allegations Unsupported by Evidence Before the Court:

Defendants contend that they did not receive the program on a closed-circuit channel. Marini Decl. at ¶¶ 7, 11. Doc. 18 at ¶ 12. However, Defendants acknowledge that they were not present when the Program was displayed and have offered no evidence by those with personal knowledge that this Court can consider. *See* Doc. 42 (explaining that the Court cannot consider witness statements not sworn under penalty of perjury and attesting to the truth of the facts set forth therein). Defendants further contend that "[two] and a half hours into [t]he Program… nationwide [] technical failure caused blackouts," resulting in "[P]laintiff, [its] partners, and[/]or

their cable subsidiaries [] transmit[ting] … [the remainder of] [t]he Program via … an open ordinary channel" of a commercial cable account. Doc. 22 at 3; *accord* Doc. 18 at ¶ 24. At approximately 9:00 p.m., a Vinny's Bar patron asked the bartender to change the channel to "Bright House Cable, channel 902," to display the Program and the bartender did so. Marini Decl. at ¶¶ 7-8; Declaration of Deidre Watters, Doc. 35 ("Watters Decl.") at 13; Declaration of Brandyn Hicks, Doc. 35 ("Hicks Decl.") at 18-19. Because Defendants failed to submit evidence in an admissible form, Defendants' contentions are without evidentiary support and are not considered in resolving Plaintiff's motion.

## III. Discussion

A. Motion to Strike Investigator Report

      Defendants move to Strike Plaintiff's investigator's affidavit on the basis that it is false. Doc. 36 at 3. Plaintiff's disagreement with the statements contained in the investigator's affidavit does not provide a basis for striking the report. *Marton v. Litton Loan Servicing LP*, 2016 WL 4943832, *10 n.6 (E.D. Cal. Sept. 15, 2016); *Rewind v. Western Union, LLC*, 2016 WL 1732871, *19 (D. Oregon May 2, 2016). Defendants' motion to strike will be denied.

B. Motion for Summary Judgment

*1. Legal Standard*

      "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A).

      Where the party moving for summary judgment will bear the burden of proof at trial that party must come forward with evidence that would entitle it to a directed verdict if the evidence

were uncontroverted at trial. *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992); *see also Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007) ("Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, *see Anderson,* 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987). In order to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at p. 587 (citation omitted).

A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898, 902 (9th Cir. 1987).

*2. Analysis*

Plaintiff moves for summary adjudication as to its cause of actions for (1) unauthorized interception or receipt of the Program in violation of the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, (or the Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605) and (2) conversion under California law. *See* Doc. 31 at 2.

a. Unauthorized Interception or Receipt of the Program

In order to recover under Section 553 or Section 605, a plaintiff must show the (1) type of signal intercepted or received (cable or satellite) and (2) that the interception or receipt was unauthorized, and (3) that the communication was divulged or published. *See J&J Sports Prods., Inc. v. Tamayo*, 2016 WL 2855126, *4 (E.D. Cal. May 16, 2016) (citing, *inter alia*, *Cal. Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985)). Since both Sections 553 and 605 are strict liability offenses, Plaintiff need not establish willfulness. *See, e.g.*, *J&J Sports Prods., Inc. v. Mikhael*, 2016 WL 2984191, *3 (C.D. Cal. May 19, 2016) (collecting cases); *J&J Sports Prods., Inc. v. Johns*, 2015 WL 13236876, *3 (E.D. Cal. Dec. 4, 2015); *accord* 47 U.S.C. § 605(e)(3)(C)(iii).

*i. Type of Signal Intercepted or Received*

The Communications Act prohibits any person from receiving or intercepting radio signals except through authorized channels. 47 U.S.C. § 605(a). Similarly, the Cable Television Consumer Protection and Competition Act prohibits any person from "intercept[ing] or receiv[ing] … any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Sections 605 and 553 are mutually exclusive because a transmission can be received or intercepted by one establishment by means of either wire or satellite, but not both. *See J & J Sports Prods., Inc. v. Gonzalez*, 2016 WL 6947591, *3 (N.D. Cal. Nov. 28, 2016); *J & J Sports Prods., Inc. v. Sandana*, 2014 WL 3689283, *3 (E.D. Cal. July, 23, 2014) ("Plaintiff cannot recover under both Section 605 and Section 553 for the same alleged interception."); *J & J Sports Prods., Inc. v. Manzano*, 2008 WL 4542962, *2 (N.D. Cal. Sept. 29, 2008) ("A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception.")

In this action it is undisputed that Defendants received the Program by way of their commercial Bright House Cable account. *See* Doc. 31-2 at 4. If recovery is appropriate, it is appropriate under Section 553 rather than Section 605.

Because the Court finds that the receipt or interception of communication was made by

wire, not satellite, insofar as Plaintiff moved for summary judgment on its Section 605 claim that motion will be denied and Plaintiff's first cause of action pursuant to Section 605 will be dismissed, sua sponte.

*ii. Interception or Receipt was Unauthorized*

Section 553 prohibits receipt of communication over a cable system "unless specifically authorized to do so by a cable operator…." 47 U.S.C. § 553(a)(1). It is designed to prevent "cable … service theft," including "exten[sion] [of] cable … purchases beyond their authorized limitations." *Joe Hand Promotions, Inc. v. Maupin*, 2016 WL 6459631, *5 (E.D. N.Y. Oct. 31, 2016); *Zuffa, LLC v. Justin.tv, Inc.*, 838 F.Supp.2d 1102, 1106 (D. Nev. 2012) (citations omitted). Commonly, Section 553 is violated by use of so-called "black box" devices to intercept and decrypt communications without authorization, *see J & J Sports Prods. V. Coyne*, 857 F.Supp.2d 909, 915 (N.D. Cal. 2012), or purchase of residential licenses to view sporting events that are then broadcast to a commercial audience thereby extending the broadcast beyond authorized limits, *E.g.*, *J & J Sports Prods., Inc. v. Cabrera*, 2016 WL 3126114, *4 (E.D. Cal. June 3, 2016) (collecting cases). *See J & J Sports Prods., Inc. v. Nguyen*, 2014 WL 60014, *4 (N.D. Cal. Jan 7, 2014).

Plaintiff has established that it had the exclusive nationwide distribution rights to the program. Gagliardi Aff. at ¶ 3. Plaintiff has established that it did not authorize Defendants to receive or broadcast the Program. Gagliardi Aff. at ¶ 3. Plaintiff further submits evidence suggesting that "transmission of the Program was electronically coded or scrambled and was not available to or intended for the use of the general public." *Id* at ¶ 11. Plaintiff's showing is sufficient to shift the burden to Defendants to establish a dispute regarding authorization to display the Program. *See Joe Hand Productions, Inc. v. Roseville Lodge No. 1293*, 161 F.Supp.3d 910, 915 (E.D. Cal. 2016). Defendants have submitted no conflicting evidence that the Court may consider.[1] Plaintiff has established that Defendants' receipt was unauthorized.

///

---

[1] Defendants have submitted declaration testimony tending to suggest that the Program was broadcast by Bright House Cable on an unencrypted channel available to all Bright House Cable customers. Watters Decl. at 13; Hicks Decl. at 19; Declaration of Carlos Alanis, Doc. 35 ("Alanis Decl.") at 21-22.

6

### *iii. Communication was Divulged or Published*

Displaying the Program for bar patrons constitutes divulgement or publication for purposes of Communications Act liability. *See Tamayo*, 2016 WL 2855126 at *4. It is undisputed that at least a portion of the Program was displayed to Vinny's Bar patrons on Saturday, May 2, 2015. Doc. 18 at ¶ 12; *see* Marini Decl. at ¶¶ 8, 12.

### *iv. Conclusion*

Plaintiff has established that Defendants violated Section 553. Summary adjudication will be granted in Plaintiff's favor on this claim.

### b. Conversion

Under California law the elements of a conversion claim are "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (citing *Oakdale Vill. Group v. Fong*, 43 Cal. App. 4th 539, 543–44 (1996)); *L.A. Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012). The act of conversion "must be done knowingly or intentionally done, but a wrongful intent is not necessary." *In re Peklar*, 260 F.3d 1035, 1037 (9th Cir. 2001); *Taylor v. Forte Hotels Int'l*, 235 Cal. App. 3d 1119, 1124 (1991). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./ Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D.Cal.1995) (misappropriation of intangible property without authority from owner is conversion).

Plaintiff has submitted evidence establishing that (1) it owned the rights to sublicense the Program and (2) Defendants did not enter into an agreement to pay Plaintiff a fee in exchange for the right to exhibit the Program in Vinny's Bar. As a result, Plaintiff incurred damages in an amount equal to the amount Defendants should have paid to exhibit the Program. On that basis, Plaintiff's motion for summary adjudication of its conversion claim will be granted.

///

///

///

**IV. Order**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion to strike is DENIED;
2. Plaintiff's Section 605 claim is DISMISSED;
3. Plaintiff's motion for partial summary judgment is GRANTED; summary judgment is entered in Plaintiff's favor as to its Section 553 and conversion claims.

In light of the foregoing order, Plaintiff is directed to indicate on the record by August 7, 2017, whether it intends to pursue its forth cause of action for violation of California Business and Professions Code Section 17200, *et seq.*, against Defendants.

IT IS SO ORDERED.

Dated: August 1, 2017

_____
SENIOR DISTRICT JUDGE